IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAM ABBOUD, | NO. C 04-00017 JW |
| Plaintiff, | **ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

## I. INTRODUCTION

Sam Abboud ("Plaintiff") brings this action against International Business Machines Corporation ("IBM" or "Defendant") alleging retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code § 12940 et seq., retaliation in violation of public policy, injunctive relief, and defamation. The action was originally filed in the Superior Court of Santa Clara County. Defendant removed the action to the Northern District of California pursuant to 28 U.S.C. § 1441(b). Presently before the Court is Defendant's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment. The Court deemed it appropriate to take the matter under submission without oral arguments. See Civ. L.R. 7-1(b). Based upon all the papers filed to date, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## II.  BACKGROUND

Plaintiff was born in Aman, Jordan.  (Mot. for Summ. J., "Mot.," at 2:20; Decl. of Scott G. Lawson in Support of Mot., "Lawson Decl.," Ex. A 9:14-17.)  He is a citizen of the State of California and at all relevant times, has resided in the Northern District of California.  Defendant is a New York corporation with its principle place of business in the state of New York.  (Def.'s Notice of Removal Action, "Notice," ¶ 7.)  Defendant is subject to personal jurisdiction in the state of California because it owns and operates a research facility called the "Santa Theresa Facility" located in San Jose.

Plaintiff began his employment with Defendant as a part-time, paid student intern in the fall of 1981.  Defendant hired Plaintiff on a full-time basis as a Junior Engineer in June 1982.  Plaintiff was then promoted several times, eventually becoming a Senior Engineer in 1995.  He worked in the Thin-Film Recording Head Department, in the technological area of thin-film recording head design and characterization engineering, within Defendant's Storage Technology Division.  This was a salaried position that fell on Band level 9 of Defendant's salary scale.  Plaintiff received praises and commendations for his work in thin-film recording heads technology.  (Mot. at 2:27-3:7; Lawson Decl., Ex. A 20:25-21:12, 25:8-16, 26:15-29:15, 41:13-23, 41:24-42:1.)

In the summer of 1998, Plaintiff filed a complaint with Defendant's Human Resources Division alleging discrimination based on his race by Joseph Smyth, Plaintiff's "first-line manager," or immediate supervisor.  Raul Gonzalez was assigned to investigate the complaint.  (Mot. at 3:8-16, Lawson Decl., Ex. A 96:4-100:16.)  Gonzalez determined there was no evidence of discrimination.  However, he did find evidence of "inattention to key personnel management responsibilities and inappropriate [use of] language" by Smyth.  As a result of the investigation, Smyth was "counseled."  (Opp'n to Mot. for Summ. J., "Opp'n," at 6:24-26; Decl. of Denis Renaud in Support of Mot., "Renaud Decl.," Ex. K Section III.)  Plaintiff was also offered a position in another department but declined, believing he had previously been promised a different position in the "modeling" department.  He continued to work in the Thin-Film Recording Head Department.  (Opp'n at 6:27-7:9; Renaud Decl., Ex. K Section III.)

In January of 2000, Plaintiff received a low work performance evaluation rating for the 1999 work year from Jinshan Li and Lamar Nix, his first-line managers at the time.[1] (Mot. at 3:27-3:3; Renaud Decl., Ex. K. Sections II and III.) In February of 2000, Plaintiff filed another complaint with Defendant's Human Resources Division alleging that his performance rating was incorrect or unjustified, that he was being retaliated against by Smyth, his second-level manager at the time, for his previous complaint to Human Resources. He also claimed that he had been unjustly denied a previously promised position. Eric Stouffer was assigned to investigate, and determined that there was no evidence supporting any of Plaintiff's allegations. (Opp'n at 7:22-24; Renaud Decl., Ex. K Section IV.)

On March 19, 2001, in response to his low performance rating, Plaintiff was placed on a 60-day plan to improve his performance. He completed the plan to the satisfaction of his managers. On August 6, 2001, however, Plaintiff was placed on a 30-day performance improvement plan because his managers were once again dissatisfied with his work. Plaintiff was terminated on September 14, 2001 for failure to meet the objectives of the 30-day plan. (Mot. at 4:4-13; Lawson Decl., Ex. A 376:23-377:16, 127:20-128:12, 377:17-378:6, 132:6-13.) Plaintiff attributes the termination to "a series of adverse actions" subsequent to his discrimination complaint to Human Resources. (Notice, Ex. A ¶ 9.)

Plaintiff appealed the termination through Defendant's internal appeal process. In January of 2002, a panel of five IBM employees voted unanimously to overturn the decision to terminate Plaintiff. (Mot. at 4:15-17; Renaud Decl., Ex. N; Lawson Decl., Ex. 141:4-8, 145:21-25, 146:22-147:7, 149:14-150:11, 152:8-11.) Plaintiff was reinstated and placed in the Tribology Department in Defendant's Storage Technology Division on February 16, 2002. (Mot. at 5:15-16; Lawson Decl., Ex. C 75:18-76:6.) In January of 2003, Hitachi Global Storage Technologies acquired Defendant's Storage Technology Division. As a result, Plaintiff became a Hitachi employee. He was employed

---

[1] Defendant's motion states that Nix and Ciaran Fox were the first-line managers who gave Plaintiff his low work performance evaluation. However, the record shows that Nix and Li were Plaintiff's first-line managers at the time.

3

1  with Hitachi until February 12, 2005, when he was terminated as part of a reduction in force. (Mot.
2  at 7:9-16; Lawson Decl., Ex. A 54:7-17, 54:25-55:2, Ex. G, 183:8-184:19.)

3  On October 17, 2002, Plaintiff filed a charge of discrimination based on race against
4  Defendant with the Department of Fair Employment and Housing ("DFEH").[2] Plaintiff then filed
5  the instant suit on October 1, 2003, in the Superior Court of Santa Clara.[3] Plaintiff amended his
6  complaint on November 10, 2003, adding defamation as his fourth claim. On January 5, 2004,
7  Defendant removed the case to the Northern District of California on the basis of diversity
8  jurisdiction. (Mot. at 7:17-20; Opp'n 1:2-9.)

### **III. STANDARDS**

10  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
11  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
12  material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
13  56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims
14  or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

15  The moving party "always bears the initial responsibility of informing the district court of the
16  basis for its motion, and identifying those portions of the pleadings, depositions, answers to
17  interrogatories, and admissions on file, together with the affidavits, if any which it believes
18  demonstrate the absence of a genuine issue of material fact." Id. at 323. If this burden is met, the
19  moving party is then entitled to judgment as a matter of law when the non-moving party fails to
20  make a sufficient showing on an essential element with respect to which the non-moving party bears
21  the burden of proof at trial. Id. at 322-23.

---

[2] It is not clear whether and on what date Plaintiff received his right-to sue-notice from the DFEH before initiating this lawsuit. However, since Defendant has not raised this issue, the Court will assume, for the purposes of this motion, that Plaintiff has exhausted the administrative remedies as required by law.

[3] The parties are not in agreement with respect to the procedural timeline of this case. Defendant contends that Plaintiff filed this lawsuit in state court on November 10, 2003, and that Plaintiff did not file a discrimination complaint with the DFEH until October 17, 2005. However, Defendant's removal notice attaches Plaintiff's Complaint, entitled "First Amended Complaint," dated November 10, 2003.

4

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

**IV.  DISCUSSION**

**A.  Retaliation Claim**

Plaintiff's first claim is for retaliation in violation of FEHA. (Notice, Ex. A ¶¶ 12-16.)  To establish a prima facie case of retaliation under FEHA, a plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. Once a plaintiff

5

establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for retaliation. McAlindin v. County of San Diego, 192 F.3d 1226, 1238 (9th Cir. 1999); Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 476 (1992).

### 1.     Prima Facie Case

#### a.     Protected Activity

Defendant contends Plaintiff has not engaged in any protected activity. Specifically, Defendant contends that, in the summer of 1998, when Plaintiff filed a complaint with Defendant's Human Resources Division against Smyth, Plaintiff's first-line manager, Plaintiff did not allege that Smyth had discriminated against him on the basis of his race or national origin. Defendant contends Plaintiff alleged only that Smyth had a "personal issue" with him. Defendant thus contends that complaining about a manager who an employee believes has a personal issue with the employee does not qualify as a protected activity. (Mot. at 9:3-10:2.) Plaintiff contends his complaint alleged discrimination by Smyth on the basis of race. (Notice, Ex. A ¶¶ 6, 13.)

The record establishes that Plaintiff's complaint was indeed a "complaint of discrimination," and that an investigator assigned to the complaint found no evidence of discrimination. (See Renaud Decl., Ex. K Section III.) Plaintiff has also testified in his deposition that he told the investigator he believed Smyth was discriminating against him on the basis of race. (Lawson Decl., Ex. A 100:7-16.) Plaintiff's subsequent testimony as to his belief that Smyth had a personal issue with him before he lodged the discrimination complaint is neither inconsistent with, nor contradictory to, his earlier testimony. (Lawson Decl., Ex. G 239:17-20.) As such, Defendant's contention that Plaintiff filed only a personal issue complaint against Smyth is inconsistent with the evidence before the Court. Accordingly, Plaintiff's complaint of discrimination constitutes a protected activity. See California Fair Employment & Housing Com. v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1018 (2004) ("[i]nformal complaints to management about discriminatory employment practices are considered sufficient opposition to trigger the prohibition against retaliation").

Defendant further contends that even assuming Plaintiff's 1998 complaint against Smyth was on the basis of race discrimination, it does not constitute a protected activity because Plaintiff's Caucasian race is not protected by California law, and Plaintiff did not complain about the discrimination he claims he suffered from - national origin discrimination.  (See Mot. at 9 n.3; Reply in Support of Mot for Summ. J., "Reply," 4:14-17.)  Defendant's contention is contrary to established law for retaliatory claims.  "It is well settled that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1043 (2005).

An employee's mistaken belief that an employer engaged in an unlawful employment practice is reasonable if it is based on a mistake made in good faith, whether the mistake is one of law or fact.  Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994).  Reasonableness is "assessed according to an objective standard - one that makes due allowance . . . for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims."  Id.  In addition, "it has long been established that Title VII, as remedial legislation, is construed broadly."  Id.

Accordingly, Plaintiff's discrimination complaint constitutes protected activity so long as Plaintiff had an objectively reasonable, good faith belief that Smyth's conduct was prohibited by law. Defendant contends that since Jordanese descendants are considered Caucasian, Plaintiff is technically Caucasian, therefore, cannot assert race discrimination against Smyth who is Caucasian. Although Caucasian is not synonymous with "white" or "European" in traditional physical anthropology, a reasonable jury could find that, in common usage, Caucasian usually means a white person of European descent, excluding people of Middle Eastern origin.  Therefore, the Court finds that Plaintiff's belief that Smyth's conduct constituted unlawful racial, rather than national origin, discrimination was objectively reasonable.

//

### b. **Adverse Employment Action**

California law applies the "materiality" test for defining an adverse employment action for purposes of FEHA retaliation lawsuits. Yanowitz, 36 Cal. 4th at 1036. The test requires an adverse employment action to "materially affect[] the terms, conditions, or privileges of employment" to be actionable. Id. at 1051. Further, the phrase terms, conditions, or privileges of employment "must be interpreted liberally and with a reasonable appreciation of the realities of the workplace." Id. at 1054. It protects a plaintiff against not only "ultimate employment decisions," such as terminations and demotions, but also "the entire spectrum of employment actions that are reasonably likely to materially and adversely affect an employee's job performance or opportunity for advancement in his or her career." Id.

The California Court of Appeals applied Yanowitz in Patten v. Grant Joint Union High School Dist., 134 Cal. App. 4th 1378 (2005). In Patten, the plaintiff was a principal of a large, underperforming middle school. Id. at 1381. After engaging in protected activity, she was transferred to another principal position at a much smaller middle school comprised of high-achieving students. Id. at 1381-82. The principal then sued her employer, the school district, alleging retaliation. Id. at 1383. The school district claimed the "lateral" transfer did not constitute an adverse employment action as a matter of law because the principal positions were both at middle schools, the principal's wages, benefits and duties remained the same, and the transfer allowed the principal to utilize her skills in curriculum development. Id. at 1389. However, the Patten court found that the school district's "view of a triable issue of adverse employment action . . . was too narrow." Id. The court held the transfer to constitute a material adverse action because the plaintiff was a relatively young principal, with her entire career ahead of her; the smaller, high-achieving school presented her with less of an opportunity to distinguish herself. Id. at 1389, 1390. The court also examined the school district's actions leading up to the transfer and the problems the principal experienced as a result of the transfer. The court held that although many of the actions and problems did not rise to material actions on their own, they presented a triable issue of material fact regarding adverse employment action when viewed collectively. Id. at 1390.

8

1    Similarly, in this case, Defendant contends that placing Plaintiff in the Tribology Department
2 was not an adverse employment action because his position was merely lateral to his position in the
3 Thin-Film Recording Head Department. (See Mot. at 10:3-13:12.) Specifically, Defendant
4 contends that in both positions, Plaintiff worked in the Storage Technology Division, held the tile of
5 Senior Engineer, received a salary that fell on Band level 9 of Defendant's salary scale, and had
6 materially similar Senior Engineer-level responsibilities and similar opportunities for advancement.
7 (Id. at 12:1-11.) It is undisputed that both positions were under the same division and that Plaintiff's
8 salary and title remained the same. (See Opp'n at 19:9-10.) However, with respect to Plaintiff's
9 responsibilities, Plaintiff declares that the duties he were assigned during his tenure in the Tribology
10 Department were "substantially different" from those in the Thin-Film Recording Heads Department
11 and that none of the duties were Senior Engineer-level work. (Decl. of Sam Abboud, "Abboud
12 Decl.", ¶ 19.) For example, Plaintiff claims that he worked alongside a summer intern and was told
13 to continue the intern's assignments when the internship came to an end. Plaintiff has also attested
14 that he did not have any training, education, or experience in the science of tribology. (Id.) On the
15 other hand, Bruno Marchon, the manager of the Tribology Department, has testified in his
16 deposition that Plaintiff worked exclusively on a Senior Engineer-level project involving
17 characterization engineering which employed thin-film recording head technology. (Reply at 6:14-
18 7:3; Reply Decl. of Scott G. Lawson, "Lawson Reply Decl.," Ex. C 21:9-23, 58:22-59:9.) Marchon
19 has also testified that Plaintiff worked alongside another Band level 9 Senior Engineer and never
20 worked with, or was assigned the same duties as, the summer intern. (Reply at 6:20-7:2, 7 n. 8;
21 Lawson Reply Decl., Ex. C 53:6-15, 40;10-42:19.)

22   On a motion for summary judgment, a court must draw all reasonable inferences in favor of
23 the non-moving party, including questions of credibility and of the weight to be accorded particular
24 evidence. Masson., 501 U.S. at 520 (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588;
25 T.W. Elec. Serv., 809 F.2d at 630. Accordingly, drawing all reasonable inferences in favor of
26 Plaintiff, the Court finds that Plaintiff has presented evidence which, if believed by a reasonable
27 jury, would establish that during his tenure with Defendant in the Tribology Department, his

28                                          9

1 responsibilities were materially different from, and at a level not comparable to, those of his former
2 position in the Thin-Film Recording Head Department.

3 Further, similar to the school principal in Patten, Plaintiff contends he was "subject to a
4 series of adverse employment actions" as retaliation for his discrimination complaint, culminating in
5 his placement in the Tribology Department. (Notice, Ex. A ¶ 13.) These alleged actions include the
6 denial of a modeling position he had been promised prior to the complaint, unwarranted negative
7 performance evaluations, and his termination.[4] (See id. ¶ 9; Opp'n at 2:25-27; Renaud Decl., Ex. K
8 Section I.) Plaintiff has presented evidence that, on August 11, 1998, Smyth corresponded with
9 Plaintiff, stating that a plan to place Plaintiff in a modeling position had not changed. (Decl. of
10 Robert David Baker in Support of Opp'n, "Baker Decl.," Ex. W.) Plaintiff has also presented
11 evidence that prior to discrimination complaint, he was a highly rated and highly honored employee
12 of Defendant. He was promoted at least six times from when he began working for Defendant as a
13 student intern in 1981 until becoming a Senior Engineer in 1995. He had received a rating of "1" or
14 "2," with "1" being the best and "4" being the worst, for the majority of the time prior to his
15 discrimination complaint. (Baker Decl., Ex. A 142:6-17.) Plaintiff also received three patents in the
16 area of thin-film recording head technology and fourteen monetary and recognition awards.
17 (Abboud Decl. ¶ 7; Baker Decl., Ex. A 142: 6-17.)

18 Each of Defendant's alleged acts of retaliation, aside from its placement of Plaintiff in the
19 Tribology Department, may not rise to a materially adverse employment action in and of itself.
20 However, as explained in Yanowitz, a court may consider a plaintiff's allegations of retaliation
21 collectively. Yanowitz, 34 Cal. 4th at 1055. "There is no requirement that an employer's retaliatory
22 acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries." Id. "Enforcing
23 a requirement that each act separately constitute an adverse employment action would subvert the

---

[4] Plaintiff's complaint and opposition do not list the actions making up the series of adverse employment actions to which Plaintiff was allegedly subjected to. However, it is evident from the pleadings that the denial of the modeling position, unwarranted negative performance evaluations, his termination, and his placement in the Tribology Department are the actions to which Plaintiff is referring.

10

1  purpose and intent of [FEHA]." Id. at 1056. Here, Plaintiff contends Defendant systematically
2  retaliated against him, that is, that all of Defendant's alleged acts of retaliation were taken in
3  response to his filing a complaint of discrimination with Human Resources and were thus connected
4  to one another. (Notice, Ex. A ¶¶ 9, 13.) A reasonable jury could conclude that these acts,
5  considered collectively, materially and adversely affected the objective terms and conditions of
6  Plaintiff's employment and Plaintiff's opportunity for advancement in his career. Therefore, the
7  Court finds that Plaintiff has raised a triable issue of material fact regarding adverse employment
8  action.

### c. Causal Link

A causal link may be established by an inference derived from circumstantial evidence demonstrating "the employer's knowledge that [the employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Morgan v. Regents of Univ. of California, 88 Cal. App. 4th 52, 69 (2000) (quoting Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988)). "The issue in each case is whether retaliatory animus was a but-for cause of the employer's action." Reeves v. Safeway Stores, Inc., 121 Cal. App. 4th 95, 108 (2004) (citing Clark v. Claremont Univ. Ctr., 6 Cal. App. 4th 639, 665 n.6 (1992)). Being that "the employer " is often a "large economic enterprise[] with [a] layered and compartmentalized management structure[]," the employee "can establish the element of causation by showing that *any* of the persons involved in bringing about the adverse action held the requisite animus, provided that such person's animus operated as a 'but-for' cause, i.e., a force without which the adverse action would not have happened." Id. (construing Clark, 6 Cal. App. 4th at 665-66.)

In this case, Defendant contends Plaintiff cannot show a causal link between his discrimination complaint and his placement in the Tribology Department because Plaintiff has no evidence of retaliatory animus on the part of any of the persons who made the decision to place Plaintiff in the Tribology Department. (Mot. at 13:15-18.) Defendant also contends that the period between the summer of 1998, when Plaintiff filed his discrimination complaint against Smyth, and February 16, 2002, when Plaintiff was placed in the Tribology Department, far surpasses the

11

1  requisite temporal proximity. (Id. at 13:27-14:3.) However, the Court has already found that
2  Plaintiff has raised a triable issue of material fact as to whether Defendant's alleged retaliatory acts,
3  when viewed collectively, constitute an adverse employment action. As such, Plaintiff can establish
4  a casual link so long as he can show that any of the persons involved in those acts held retaliatory
5  animus sufficient to operate as a but-for cause of the acts and temporal proximity.

6  Plaintiff has testified in his deposition that Gabor Paal, his third-line manager during the
7  summer of 1998, told him he was not going to "reward" him for complaining to Human Resources
8  by placing him in the modeling position he had previously been promised. (Opp'n at 7:5-8; Baker
9  Decl., Ex. A 106:5-107: 14.). Plaintiff has further testified that Nix, one of the two first-line
10 managers who evaluated Plaintiff's work performance for 1999 work year, acknowledged that
11 Smyth, as Plaintiff's second-line manager at the time, was involved with Plaintiff's employment.
12 (Opp'n at 7:15-19; Baker Decl., Ex. A 245:11-248:12.) The requisite retaliatory animus on the part
13 of Paal is evident from his alleged statement and may be rationally inferred on the part of Smyth
14 since Smyth was the subject of Plaintiff's discrimination complaint.

15 The evidence which Plaintiff has presented shows that Defendant's alleged series of
16 retaliatory acts commenced within a very short time after he filed his discrimination complaint. This
17 satisfies the temporal proximity requirement. Plaintiff was allegedly denied the modeling position at
18 the conclusion of the investigation into his discrimination complaint. The other actions making up
19 Defendant's adverse employment action followed in a linear fashion. Accordingly, the Court finds
20 that Plaintiff has presented a triable issue of material fact as to a causal link between the protected
21 activity and the adverse employment action. Plaintiff has therefore established his prima facie case.

22 **2.      Legitimate, Nonretaliatory Reason and Pretext**

23 Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer
24 to articulate a legitimate, nonretaliatory reason for its adverse employment action. McAlindin, 192
25 F.3d at 1238; Flait, 3 Cal. App. 4th at 476. The burden then shifts back to the plaintiff to show that
26 the employer's proffered reason is merely a pretext for retaliation. McAlindin, 192 F.3d at 1238;
27 Flait, 3 Cal. App. 4th at 476. Here, Defendant contends it placed Plaintiff in the Tribology
28

12

1  Department to avoid further conflict between Plaintiff and Smyth and to accommodate Plaintiff's
2  stated desire not to return to work under Smyth's supervision. (Mot. at 15:8-10, Donahoe Depo
3  50:7-15, Aboud Depo 258:21-259:1, 260:21-25.) These are legitimate, nonretaliatory reasons
4  sufficient to permit a jury to conclude that the placement may not have been motivated by retaliatory
5  animus. See, e.g., Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464-65 (9th Cir. 1994)
6  (holding that the employer's proffered reason for transferring the plaintiff to a different work shift -
7  to separate her from the supervisor against whom she complained of sexual harassment - was not
8  retaliatory in nature).

9  However, Defendant fails to address any of the other actions making up its alleged adverse
10 employment action. Defendant has not offered an explanation for allegedly denying Plaintiff a
11 modeling position. Defendant has also not explained why Plaintiff, who was a highly rated
12 employee prior to his discrimination complaint, was given a lower performance rating after he filed
13 the complaint. Additionally, Defendant has failed to explain why Plaintiff was terminated and then
14 promptly reinstated by a panel of five IBM employees who voted unanimously to overturn the
15 decision to terminate Plaintiff. In light of this failure, the burden of showing pretext does not shift
16 back to Plaintiff, and the legally mandatory inference of retaliation arising from Plaintiff's prima
17 facie case does not drop away. Yartzoff v. Thomas, 809 F.2d 1371, 1377 (9th Cir. 1987) (citing
18 Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)). Accordingly, the
19 Court denies summary judgment on Plaintiff's retaliation claim.

20 **B.     Retaliation in Violation of Public Policy**

21 Plaintiff's second claim is for retaliation in violation of public policy under Tameny v.
22 Atlantic Richfield Co., 27 Cal. 3d 167 (1980). (Notice, Ex. A ¶¶ 17-20.) In Tameny, the California
23 Supreme Court held that "when an employer's discharge of an employee violates fundamental
24 principles of public policy, the discharged employee may maintain a tort action and recover damages
25 traditionally available in such actions." Id. at 170. The California Court of Appeal has subsequently
26 expanded the relief in Tameny to protect an employee who was demoted as a retaliatory measure,
27 but was not terminated. Garcia v. Rockwell Int'l Corp., 187 Cal. App. 3d 1556, 1162 (1986). To

13

1  support a Tameny claim, "the public policy triggering the violation must be tethered to a
2  constitutional or statutory provision." Green v. Ralee Engineering Co., 19 Cal. 4th 66, 71 (1998)
3  (citing Gantt v. Sentry Ins., 1 Cal. 4 1083, 1095 (1992)).

4       In this case, the underlying policy alleged to be violated is FEHA. (Notice, Ex. A ¶ 18;
5  Opp'n at 23:4-5.) Defendant contends Plaintiff cannot make out a Tameny claim because Plaintiff
6  was neither terminated nor demoted, and because Plaintiff cannot show that IBM retaliated against
7  him in violation of FEHA. (Mot. at 17:28-18:5.) It is undisputed that IBM terminated Plaintiff's
8  employment. (Mot. at 4:11-13; Opp'n at 9: 21-22.; Notice, Ex. A ¶ 9.) Though Plaintiff was later
9  reinstated after a review process, there is a genuine dispute as to whether the initial termination was
10 in retaliation for his discrimination complaint. In addition, after Plaintiff was reinstated, he was
11 placed in an entirely different department. Plaintiff contends that this placement was a retaliatory
12 demotion. (Opp'n at 19:3-5.) Because there are triable issues of fact precluding summary judgment
13 as to Plaintiff's FEHA claim, summary judgment on Plaintiff's claim for retaliation in violation of
14 public policy is improper. The Court therefore denies summary judgment on Plaintiff's claim of
15 retaliation in violation of public policy.

16 **C.     Injunction for Reinstatement Claim**

17      Plaintiff's third claim for the injunctive relief of reinstatement is improper. "[A]n injunction
18 is a remedy, not a cause of action." Roberts v. Los Angeles County Bar Assn., 105 Cal. App. 4th
19 604, 618 (2003) (citing McDowell v. Watson, 59 Cal. App. 4th 1155, 1159. As such, the Court
20 dismisses Plaintiff's third cause of action as improper. This dismissal does not preclude Plaintiff
21 from seeking injunctive relief as part of his prayer for relief, assuming Plaintiff has properly asked
22 for such relief in the operative Complaint. Defendant contends an injunction requiring reinstatement
23 is not available here because Hitachi has acquired the division that includes Plaintiff's former
24 position in the Thin-Film Recording Head Department. (Mot. at 7:9-12; Lawson Decl., Ex. A 54:7-
25 17, 54:25-55:2.) The Court need not address this issue at this time.
26 //
27
28

14

**D.      Defamation Claim**

Plaintiff's fourth claim is for defamation. Plaintiff's claim fails for several reasons.

**1.      Statute of Limitations**

Plaintiff's defamation claim is barred by the one-year statute of limitations set forth in Cal. Civ. Proc. Code § 3409(c) for defamation claims. Plaintiff contends that his claim is timely because each time his IBM employment records were reviewed by the IBM managers, with whom he interviewed, there was a new publication of the documents. (Opp'n at 23:16-19.) Plaintiff's contention is without merit. In California, the accrual of claims arising out of the publication of defamatory statements is governed by the "single-publication rule." Under the rule, the period of limitations commences upon the first general publication. Shively v. Bozanich, 31 Cal. 4 1230, 1245 (2003) (citing Belli v. Roberts Furs, 240 Cal. App. 2d 284, 289 (1966)). Accordingly, because Plaintiff's work performance evaluation, improvement plans, and termination were communicated to persons in IBM's HR Department and persons making up IBM's internal appeal panel in 2000 and 2001, Plaintiff's defamation claim, filed in 2003, is untimely.

**2.      Failure to State Claim**

Even assuming Plaintiff's claim is timely, it nonetheless fails because Plaintiff has not stated a claim for defamation. A claim of defamation requires a showing of "intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999) (citing Cal. Civ. Code §§ 45, 46.). Here, Plaintiff alleges that "John Doe #1, a managerial employee of IBM published to Wayne Imaino, an IBM manager, that Plaintiff was not competent to hold a position in Imaino's department." (Notice, Ex. A ¶ 25.) Plaintiff further alleges that "John Doe #2, a managerial employee of IBM, published to Stewart Parkin, an IBM manager that Plaintiff was not competent to hold a position in Parkin's department." (Id. ¶ 26.) However, Plaintiff has not presented the Court with any evidence to substantiate these allegations. Plaintiff does not identify what statements of fact were made or by whom. In fact, Plaintiff contends he was not defamed by statements made by

15

1 his former managers, Smyth and/or Ciaran Fox, or by IBM's HR Department to Imaino and Parkin.
2 (Opp'n at 23:12-14.)

3   Rather, in his opposition to Defendant's motion, Plaintiff contends "the defamation
4 constitutes the '3' rating [he] received, the 60 and 30-day notices [he] was placed on, and finally the
5 termination." (Id. at 23:14-16.) Plaintiff's claim fails on this theory of liability as well because he
6 "may not raise a new theory of liability for the first time, after the close of discovery, in his
7 opposition to summary judgment without amending his complaint." Matthews v. Xerox Corp., 319
8 F.Supp. 2d 1166, 1172 (D. Cal. 2004) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-92
9 (9th Cir. 2000)).

10   Furthermore, Plaintiff has failed to identify any defamatory statement of fact made in
11 connection with these personnel events. In Jensen v. Hewlett-Packard Co., 14 Cal. App. 4th 958,
12 965 (1993), the court considered whether a poor performance evaluation by an employer supports a
13 cause of action for defamation by the employee. The court held that "unless an employer's
14 performance evaluation falsely accuses an employee of criminal conduct, lack of integrity,
15 dishonesty, incompetence or reprehensible personal characteristics or behavior [citation], it cannot
16 support a cause of action for libel." Id. The court continued, stating, "This is true even when the
17 employer's perceptions about an employee's efforts, attitude, performance, potential or worth to the
18 enterprise are objectively wrong and cannot be supported by reference to concrete, provable facts."
19 Id. Ultimately, the court concluded that a performance evaluation denotes opinion, not fact, and
20 therefore is not actionable defamation. Id. at 970-71. In this case, Plaintiff's first-line managers
21 rated Plaintiff as "3," indicating that he "achieved some/most of [his] commitments." (Opp'n at
22 2:21-22; Renaud Decl., Ex. K Section III.) The performance evaluation also included "supporting
23 comments that [Plaintiff's] team interaction could have been stronger." (Renaud Decl., Ex. K
24 Section III.) The rating and supporting comments do not suggest any criminal conduct, or lack of
25 integrity, honesty, or competency on the part of Plaintiff, nor do they impute any reprehensible
26 personal characteristics or behavior. Therefore, they are not actionable defamation.

27
28

16

Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's defamation claim.

## V.  CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.  The Court denies Defendant's motion for summary judgment on Plaintiff's First and Second Causes of Action, e.g. retaliation in violation of FEHA and retaliation in violation of public policy.  The Court dismisses Plaintiff's Third and Fourth Causes of Action, e.g., injunction for reinstatement and defamation.

Dated April 7, 2006

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bradford K. Newman bradfordnewman@paulhastings.com
Dugan William Bliss duganbliss@quinnemanuel.com
Robert David Baker attyatlaw@earthlink.net
Scott G. Lawson scottlawson@quinnemanuel.com
William A. Morehead williammorehead@quinnemanuel.com

**Dated: April 7, 2006**                                    **Richard w. Wieking, Clerk**

**By:**     /s/ JW Chambers
         Melissa Peralta
         Courtroom Deputy

18